# Exh. A
# to Notice of Removal

Lynn G. Foster (1105)
Lynn G. Foster, L.C.
602 East 300 South
Salt Lake City, UT 84102
Telephone: (801) 364-5633
Facsimile:  (801) 355-8938
E-Mail: foster@fosterpatlaw.com

Attorneys for Plaintiff

---

## IN THE FOURTH JUDICIAL DISTRICT
## IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| BETA TECHNOLOGIES, INC. | **VERIFIED COMPLAINT** |
| Plaintiff, | |
| vs. | |
| NEXMED HOLDINGS, INC., | Civil No. _____ |
| Defendant. | Judge: _____ |

### THE PARTIES

1.      The Plaintiff, Beta Technologies, Inc. (Beta) is a Utah corporation, with a principal

place of business at 490 East Buckley, Springville, Utah 84663.

2.      The Defendant Nexmed Holdings, Inc. (NexMed), on information and belief, is a

Delaware corporation doing business, causing tortious injury and litigating in Utah.

### JURISDICTION AND VENUE

3.      The Court has jurisdiction of this matter under the Utah long arm statute (Defendant's

doing business, causing tortious injury and litigating in Utah). Venue is proper in Utah County,

where the Plaintiff resides and where the Defendant has caused the Plaintiff tortious injury.

BACKGROUND

4.      NexMed prosecuted a patent infringement action in the Federal District Court for the

District of Utah against Clealon B. Mann; Block Investment, Inc. and The Somerset Group, Inc., i.e.

Civil No. 04 cv 00288 TS (Federal Suit).

5.      Though NexMed knew Beta manufactured the allegedly infringing device (the Cold

Sore Eliminator), NexMed elected not name Beta as a party in the Federal Suit.

6.      NexMed filed a Motion in Limine and obtained an Order preventing Beta personnel

from testifying at trial in the Federal Suit on the issues of patent invalidity, patent unenforceability,

inoperativeness and patent non-infringement.

7.      The president of Beta gave deposition testimony in the Federal Suit to the effect that

the patent in suit was invalid and not infringed and disclosed an inoperative device.

8.      When the President of Beta attempted to testify at trial in the Federal Suit on the

issues identified in paragraphs 6 and 7 above, the Court refused to allow the proposed testimony.

Beta was clearly informed by the Court that Beta was not a party to the Federal Suit.

9.      A judgment was issued in the Federal Suit, copy attached as Exhibit "A."  The

judgment includes injunctive relief against two of the three defendants and against non-parties only

so far as acting for or in concert or participation with any enjoined defendant.  The injunction does

not enjoin non-parties acting independent of the defendants.  Specifically, paragraph 9 of the Exhibit

"A" Judgment identifies with clarity that non-parties, including the plaintiff here, are not enjoined

from acting independently of the two enjoined defendants.

> Defendants Block Investment Inc. and Clealon B. Mann, Block Investment Inc.'s
> officers, directors, employees, agents, representatives, attorneys, and *all other persons or*
> *entities acting or claiming to act on behalf of either Defendant, or in concert or in*
> *participation with either Defendant*, who receive actual notice of this Judgment by personal

service or otherwise, are permanently enjoined during the life of said U.S. Patent No. 5,133,352 . . . .

10.     Paragraph 9 of the Judgment is consistent with Federal Rule of Civil Procedure 65(d), which limits injunctions as follows:

> *Every order granting an injunction . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.*

11.     Independent of any defendant in the Federal Suit, Beta has a contractual relation with Sky Mall, Inc. for the advertising and sale of Beta's Cold Sore Inhibitor (the Product).  A copy of this contract is attached as Exhibit "B."

12.     Under the Exhibit "B" contract, Sky Mall advertises the Product, accepted orders (which are filled by Beta) and received a commission. Thus, the Exhibit "B" contract establishes existing contract relations with Sky Mall and prospective economic relations with future customers purchasing the Product from Beta via the efforts of Sky Mall.

13.     NexMed, through legal counsel, Talivaldis Cepuritis, who will be a material witness here, Sky Mall, Inc., notified Sky Mall by letter on August 17, 2006 of the Judgment in the Federal Suit.  A copy of this letter notice is attached as Exhibit "C."

14.     The intent of the Exhibit "C" letter notice was to intimidate Sky Mall and disrupt the existing contractual relations between Beta and Sky Mall and to curtail or eliminate future economic relations by Beta with third party customers of the Product.

15.     The Exhibit "C" letter notice does not clearly recite that the injunctive relief in the Federal Suit was limited to two of the Defendants there, but, after claiming Beta's Product and the Cold Sore Eliminator are the same, misrepresents the scope of the injunction, as if it applied to Sky Mall, knowing it does not, i.e.;

C:\CLIENTS\2006 Clients\Heath -NEXMED\PLEADINGS 8539\Complaint.wpd        3

. . . a Judgment was rendered in favor of our client and against *the sellers and promoters* . . . .

16.     Sky Mall's understanding of the Exhibit "C" letter notice to some extent is sent forth in Sky Mall's letter of September 15, 2006, copy attached as Exhibit "D," i.e. that the injunction prohibits "distribution of . . . [Beta's Product]. . . as a violation of United States Patent No. 5,133,352."

17.     As a result of NexMed's false contentions concerning the scope and nature of the injunction, for the purpose of interfering with the contract between Beta and Sky Mall and sales to third party customers, Beta's previous approved advertisement of the Product in Sky Mall's literature for January - March 2007 was pulled from the Sky Mall publication, unlawfully causing great damage to Beta. See attached Exhibit "E."

18.     NexMed's interference with Beta's present contract with Sky Mall and with Beta's ability to sell the Product in the future to third party customers was for an improper purpose and/or by improper means, i.e. to deprive Beta of business by intentionally mis-characterizing the injunction as apply to Beta and/or Sky Mall (which were acting independent of the Federal Defendants), mis-characterizing the injunction as applying to both the Cold Sore Inhibitor and the Cole Sore Eliminator and mis-characterizing the injunction as applying to all and all non-parties who sold or promoted either of the two products. Thus, NexMed caused Sky Mall to take the Product off the market based on NexMed's false claims concerning the nature and scope of the Federal Injunction.

## FIRST CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH
## EXISTING CONTRACTUAL RELATIONS

19.     The allegations of paragraphs 1 - 18 above are incorporated herein by reference.

20.     NexMed's acts set forth above constitutes intentional tortious interference with Beta's existing contractual relations with Sky Mall for an improper purpose and/or by improper means causing injury to Beta.

21.     Beta is entitled to damages, enhanced or punitive damages, attorney's fees and cost based on NexMed's tortious interference with Beta existing contractual relations and to injunctive relief against further acts of such interference.

SECOND CAUSE OF ACTION<br>TORTIOUS INTERFERENCE

22.     The allegations of paragraphs 1 - 21 above are incorporated herein by reference.

23.     NexMed's acts set forth above constitutes intentional tortious interference with prospective economic relations with third party customers who would have purchased the Product but will not because of NexMed's unlawful tortious interference with the Beta/Sky Mall contract for an improper purpose and/or by improper means causing injury to Beta.

24.     Beta is entitled to damages, enhanced or punitive damages, attorney's fees and cost based on NexMed's tortious interference with Beta's prospective economic relations with future customers and to injunctive relief against further acts of such interference.

THIRD CAUSE OF ACTION<br>COMMERCIAL DISPARAGEMENT

25.     The allegations of paragraphs 1 - 24 above are incorporated herein by reference.

26.     NexMed's acts recited above constitute commercial disparagement of Beta's Product.

27.     Beta is entitled to damages enhanced or punitive damages, attorneys fees and costs based on NexMed's acts of commercial disparagement and for injunctive relief against further acts of commercial disparagement.

## PRAYER FOR RELIEF

WHEREFORE, Beta prays for judgment against NexMed as follows:

1.      An award of damages in favor of Beta and against NexMed, as requested above.


2.      An award of enhanced or punitive damages, as requested above.

3.      An award of attorney's fees and costs.

4.      A permanent injunction against further acts of tortious interference and commercial disparagement.

5.      For such further relief as the Court deems proper under the circumstances.

DATED this 31ˢᵗ day of October 2006.

LYNN G. FOSTER, L.C.

Lynn G. Foster
Attorney for Plaintiff


## JURY DEMAND

BETA demands a jury trial on all issues so triable.

DATED this 31ˢᵗ day of October 2006.

LYNN G. FOSTER, L.C.

Lynn G. Foster
Attorney for Plaintiff


Plaintiff's Address:
490 East Buckley Avenue
Springville, UT 84663

## VERIFIED STATEMENT

STATE OF UTAH       )
                      : ss

COUNTY OF ___Utah___ )

    CHESTER HEATH, being first duly sworn, on oath depose and state that he is currently

President of Beta Technologies, Inc.; that he has read the foregoing Complaint and that the same is

true of his own knowledge, except as to matters therein alleged on information and belief, and as to

such matters he believes them to be true; that the grounds of his knowledge and belief is his

acquaintance with the Plaintiff's business and its affairs as President thereof and various documents

and information obtained upon examination of files of the Plaintiff and other documents and events,

which they caused or observed.

 

_____

Chester Heath


SUBSCRIBED AND SWORN to before me this __30__ day of __October__ , 2006.


_____
Notary Public

KAYLA WEAVER
Notary Public
State of Utah
My Comm. Expires Apr 8, 2009
7181 S. Campus View Dr. West Jordan UT 84084

# EXHIBIT "A"

Wallace T. Boyack (Utah Bar No. 0404)
Paul H. Ashton (Utah Bar No. 3697)
Boyack Ashton LC
175 South Main, Suite 1212
Salt Lake City, Utah 84111
Tel. No. (801) 596-3337

Talivaldis Cepuritis
Joseph M. Kuo
Olson & Hierl, Ltd.
20 North Wacker Drive
36th Floor
Chicago, Illinois 60606
Tel. No. (312) 580-1180

FILED
U.S DISTRICT COURT     RECEIVED CLERK

2006 FEB 21  A 11: 10     FEB 0 1 2006

DISTRICT OF UTAH     U.S. DISTRICT COURT

BY:_____
      DEPUTY CLERK

        Attorneys for Plaintiff,
        NEXMED HOLDINGS, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NEXMED HOLDINGS, INC.,<br>a Delaware corporation,<br><br>           Plaintiff,<br><br>      v.<br><br>BLOCK INVESTMENT INC.,<br>a Bahama corporation, and<br>CLEALON B. MANN,<br>an individual, and<br>THE SOMERSET GROUP, INC.,<br>A Nevada corporation,<br><br>          Defendants. | Civil Action No. 2:04cv00288TS<br><br>**[PROPOSED] JUDGMENT**<br><br>Judge Ted Stewart<br><br>Chief Magistrate Judge Samuel Alba |

This matter having come before this Court, having been tried before a jury, the Court having found as a matter of law that Defendants Block Investment Inc. and Clealon B. Mann have infringed claims 5, 6, and 7 of U.S. Patent No. 5,133,352, the jury having reached a verdict, and this Court having jurisdiction over the parties and the subject matter hereof:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

      1.      Plaintiff, NexMed Holdings, Inc., is the owner of United States Letters Patent No. 5,133,352 (the '352 Patent).

      2.      Claims 5, 6, and 7 of United States Letters Patent No. 5,133,352 are not invalid.

      3.      Clealon B. Mann and purchasers of the Cold Sore Eliminator have infringed the '352 Patent by practicing the methods of claims 5, 6, and 7 thereof through their use of the device known as the Cold Sore Eliminator.

      4.      Defendant Block Investment Inc. has infringed claims 5, 6, and 7 of the '352 Patent by inducing others to practice the methods of claims 5, 6, and 7 thereof through its sales, offers for sale, and instructions on the use of the device known as the Cold Sore Eliminator.

      5.      Defendant Clealon B. Mann has infringed claims of the '352 Patent by inducing others to practice the methods of claims 5, 6, and 7 thereof through his sales, offers for sale, and instructions on the use of the Cold Sore Eliminator.

      6.      The infringement of the '352 Patent by Defendants Clealon B. Mann and Block Investment Inc. was willful.

      7.      Plaintiff, NexMed Holdings, Inc., is entitled to recover from Defendant Block Investment Inc. reasonable royalty damages in the amount of one hundred forty-four thousand dollars ($144,000.00), which Plaintiff has sustained as a result of the aforesaid acts of Block Investment Inc.

8.    Plaintiff, NexMed Holdings, Inc., is entitled to recover from Defendant Clealon B. Mann reasonable royalty damages in the amount of one hundred thousand dollars ($100,000.00), which Plaintiff has sustained as a result of the aforesaid acts of Clealon B. Mann.

9.    Defendants Block Investment Inc. and Clealon B. Mann, Block Investment Inc.'s officers, directors, employees, agents, representatives, attorneys, and all other persons or entities acting or claiming to act on behalf of either Defendant, or in concert or in participation with either Defendant, who receive actual notice of this Judgment by personal service or otherwise, are permanently enjoined during the life of said U.S. Patent No. 5,133,352 (a) from promoting, offering for sale, selling, using, or instructing others to use in the United States the device previously and currently known as the Cold Sore Eliminator, (b) from promoting, offering for sale, selling, using, or instructing others to use in the United States devices identical or equivalent to the Cold Sore Eliminator that operate in the same manner and produce substantially the same results as the Cold Sore Eliminator, and (c) from infringing claims 5, 6 and 7 of said U.S. Patent No. 5,133,352.

10.    Defendants Block Investment Inc. and Clealon B. Mann shall immediately take all necessary actions to discontinue any and all advertising for the Cold Sore Eliminator by or on behalf of either Defendant, including but not limited to advertisements in SkyMall Magazine, SkyMall.com, and the website www.coldsore-eliminator.com.

11.    Judgment is hereby entered against Defendants Clealon B. Mann and Block Investment Inc. for costs.

12.    All other matters, including but not limited to the determination of the amount of costs, whether the case is exceptional under 35 U.S.C. §285, whether Plaintiff is entitled to attorneys fees, prejudgment interest, and whether Plaintiff is entitled to enhanced damages under 35 U.S.C. §284 are reserved for later disposition.

3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this ___/___ day of February 2006 a true and

correct copy of the foregoing **[PROPOSED] JUDGMENT** was served on Defendants by

facsimile transmission and addressed as follows:

> James N. Barber, Esq.
> 50 West Broadway, Suite 100
> Salt Lake City, UT  84101
>
> Fax No. 801-364-3406

5

EXHIBIT "B"

## VENDOR AGREEMENT

1. **Agreement.** This agreement (the "Agreement") is between SkyMall, Inc., a Delaware corporation, its affiliates and subsidiaries, including but not limited to skymall.com, Inc. (collectively as "SkyMall") and *Fiesta Technologies* *IATA* corporation ("Vendor") who agree as follows:

2. **Vendor Participation and Sales.**

2.1 **Vendor Participation in SkyMall Programs.** SkyMall offers Vendor a variety of merchandise programs fully described in the SkyMall Media Kit (the "Media Kit"). Vendor has agreed to participate in the programs identified on the Insertion Order ("Exhibit A"). After execution of this Agreement, Vendor will renew its participation in SkyMall's programs when both parties sign a new Exhibit A and will abide by the terms of this Agreement for the period identified therein. Vendor acknowledges that SkyMall does not guarantee participation in any of its programs unless specifically stated on Exhibit A, which is incorporated into this Agreement by this reference.

2.2 **Vendor Sales and Promotion.** Under the merchandise programs, SkyMall shall promote certain products that it will obtain from Vendor for sale to SkyMall customers through Vendor's fulfillment ("Products"). In connection with participation in the merchandise programs, Vendor shall sell to SkyMall, and SkyMall shall purchase from Vendor, all Products that are necessary for SkyMall to fill orders arising from Vendor's participation in the merchandise programs ("Purchased Products"). Title to the Purchased Products shall transfer to SkyMall upon Vendor's shipment of the Purchased Products to the customer. Title to any products that are thereafter cancelled, backordered or discontinued shall transfer back to Vendor.

2.3 **Program Administration.** Both parties recognize that each will incur certain administrative costs in administering the merchandise programs under this Agreement. Unless specifically agreed otherwise herein, each party will be responsible for its own costs and will reasonably cooperate with the other party in providing any material required to perform the merchandise programs. SkyMall follows only one mapping design.. Subsequent designs or alterations will be billed to the Vendor at SkyMall's cost. Vendor acknowledges it is responsible for the sales of its Products and SkyMall does not guarantee any level of sales volume.

3. **Obligations of Vendor.**

3.1 **Creative Materials; Approval; Deadlines.**

3.1.1. The item selection, subject matter, form, size, wording, illustration, photography, typography and all other aspects of the Product presentation and other materials that accompany the Products must conform to SkyMall's guidelines and are subject to the final approval of SkyMall and its affiliates. SkyMall or its affiliates reserve the right to reject any of Vendor's item selections or materials. Rejection may result in an elimination of the Product(s) on one or more of SkyMall's programs or affiliates. Rates may be prorated upon rejection. Vendor will identify in its creative materials those Products that cannot be shipped in accordance with SkyMall's Expected Shipping Policy described in the Media Kit.

3.1.2. SkyMall reserves the right to revise at Vendor's expense any of Vendor's materials that violate SkyMall's guidelines. Vendor agrees that SkyMall is not responsible for any errors, including but not limited to copy, typographical or translation errors and errors relating to weight or dimension of products.

3.1.3. Vendor will submit all materials to SkyMall on or before published deadlines or pay expenses incurred by SkyMall from Vendor's late submission. Vendor will promptly address any creative issue raised by SkyMall.

3.2 **Fulfillment.**

3.2.1. Vendor will ship the Purchased Products, freight prepaid, within 48 hours after SkyMall delivers the order to Vendor. If orders can not be shipped within the foregoing time frame, product shipping times must be included in product copy and information sheets. Vendor will comply with SkyMall's Expedited Shipping Policy for those orders received by Vendor from SkyMall before 1:00 p.m. Eastern Standard Time. Vendor agrees to fulfill all items during the entire promotion period defined in Exhibit A, plus ninety (90) days thereafter. If SkyMall receives any orders for products after the ninety (90) day tail period, SkyMall will process such orders in accordance with the

Exhibit A then in effect. If a subsequent Exhibit A is executed between the parties, or will process this order in accordance with the original Exhibit A if no subsequent Exhibit A is executed between the parties and if so directed to accept orders after the tail period by Vendor and agreed by SkyMall.

3.2.2. Vendor will ship orders received from SkyMall by a shipping service of equal or greater quality than its ordinary service or service determined by SkyMall and will handle the orders in accordance with industry customs and standards.

Vendor agrees to use a traceable shipping method and provide a tracking number for each shipment to SkyMall. Vendor will provide proof of shipment to SkyMall within 2 business days after it ships each order so that SkyMall may properly charge customers. If Vendor desires additional delivery (over and above those published, less the processing fee) for an item such additional charges shall be reflected in Vendor's copy. SkyMall shall provide standard delivery charges on all orders in which there are multiple vendors. Unless stated otherwise in this Agreement, Vendor must accept orders and send order status electronically.

3.2.3. Vendor is responsible for complying with all applicable statutes, codes, rules and regulations, including but not limited to the Federal Trade Commission's Mail Order rules.

3.2.4. Vendor will respond to a request for information by SkyMall regarding delivery of any Purchased Products or customer service within 2 business days of receipt.

3.3 **Inventory.** Vendor will maintain inventory of Products at a level sufficient to satisfy reasonably expected demand. Vendor will provide SkyMall with accurate availability inventory information upon request. SkyMall is not responsible for any inventory or returns.

3.4 **Terms of Payment.** Vendor will pay SkyMall in accordance with the terms in Exhibit A. Any flat monthly payments are due in advance. Any initial monthly fee is due at the time of execution of this Agreement. For SkyMall's fees, Vendor will be billed one month in advance by the tenth of each month. All such payments are due twenty (20) days after the date of the invoice, except for variable fees, which shall be due seven (7) days after receipt of weekly sales report, unless otherwise specified. All rates are subject to change.

3.5 **Product Pricing.** Vendor will honor the Product prices stated in its copy (or addendum attached) for the promotion period, plus ninety (90) days thereafter. Vendor will comply with SkyMall's Fair Price Policy that requires Vendor to match price found by customers elsewhere for the identical merchandise. Vendors shipping goods into the United States will provide item level prices to include payment for all duties.

3.6 **Return Policy.** SkyMall and Vendor (in its shipments) will instruct customers to return products directly to Vendor and unless otherwise specified Vendor will accept such returns. If products are returned to SkyMall, SkyMall shall deliver the returned products to Vendor, at Vendor's sole expense. Vendor will deliver to SkyMall, weekly, or more often, if requested, reports showing the products returned. Unless otherwise specified, Vendor shall give SkyMall full credit for the total amount credited to customer or charged to the Vendor (or SkyMall) for returned products (including any and all charges).

3.7 **Holdback for Returns.** Unless otherwise specified, SkyMall will retain a Holdback for merchandise returns and charge backs. The Holdback shall initially be defined as twelve percent (12%) of gross merchandise sales for a period of no less than three months and as agreed upon by the parties thereafter based on actual returns, plus two percent (2%).

3.8 **Promotions; Discounts.** Vendor will participate in reasonable promotions and discounts required by SkyMall, including offering discounts to employees and those designed to increase merchandise sales. Vendor will honor the discounts up to 25% of the retail price of any item. Unless otherwise disclosed on Vendor's creative discounts will apply.

3.9 **Vendor Service Procedures.** Unless otherwise specified, Vendor will repair or exchange returned Purchased Products, and return the Purchased Products to SkyMall's customers, at its sole expense. Vendor will provide an "800" telephone number for use by customers with service issues.

3.10 Customer Names. Vendor agrees to use customer names in the customary industry manner. Vendor will not sell, rent or give customer telephone numbers to any entity or individual. Customer electronic mail addresses will not be made available to Vendor, nor will Vendor use customer electronic mail addresses.

3.11 Product Status.

3.11.1 Order Status. Vendor agrees to update the status of all orders received from SkyMall. As used in the foregoing, "status" shall include products that are back ordered, shipped, cancelled, discontinued, returned and acknowledged. Data references shall be supplied for status changes. Vendor must provide the estimated time of arrival for products on backordered status. As used in the foregoing, "estimated time of arrival" shall mean the date upon which a customer can expect to receive the ordered product.

3.11.2 Inventory Status. Vendor shall provide a status of its existing inventory levels on a once a week basis. If there is a material change in inventory levels, Vendor agrees to notify SkyMall within 2 business days of the change. Inventory status information for products on backorder shall include an estimated time of arrival. As used in the foregoing, "estimated time of arrival" shall mean the date that supply will exceed the current demand.

4. Obligations of SkyMall.

4.1 Order Processing. SkyMall will maintain a call center to accept customer orders for Products and will maintain a web site in which customers can place orders electronically. SkyMall will accept customer orders for Products for the promotion period stated in Exhibit A, plus 90 days.

4.2 Payment to Vendor for Sales; Interest. Upon receipt of orders from customers and confirmation from Vendor that the orders have been shipped, SkyMall will submit to Vendor a sales report. SkyMall will remit to Vendor sale proceeds and shipping and handling revenues less the fees detailed in Exhibit A. SkyMall is not obligated to make payments to Vendor if Vendor is not current in payments due SkyMall under Exhibit A, and SkyMall will charge Vendor 1.5% interest per month on any outstanding balance.

5. Warranty, Title, and Indemnity.

5.1 Warranty to Customers. SkyMall and Vendor will offer warranties for Products consistent with the warranties offered by Vendor for products sold through other channels. Customers must return Purchased Products requiring warranty service to Vendor.

5.2 Title and Risk of Loss. Vendor will transfer Purchased Products to SkyMall and its customers free and clear of all security interests, liens, and other encumbrances. Risk of loss from any casualty to the Purchased Products will be on Vendor until their receipt and acceptance by SkyMall's customers

5.3 Indemnity by SkyMall. SkyMall will defend, indemnify and hold harmless Vendor, and its officers, directors, employees, and agents, from all fines, suits, proceedings, claims, demands, debts, obligations, liabilities or actions of any kind by anyone (including reasonable attorneys' fees and costs) (a "Loss") arising from or connected with the activities or operations of SkyMall or its officers, directors, employees, or agents.

5.4 Indemnity by Vendor; Product Liability Insurance; Intellectual Property. Vendor will defend, indemnify and hold harmless SkyMall, and its officers, directors, employees, and agents, as well as SkyMall's catalog carriers, and their officers, directors, employees, and agents (a) from all Loss arising from or connected with the activities or operations of Vendor or its officers, directors, affiliates, employees (b) from all Loss in product liability actions involving the defective manufacture or design of the Products, (c) from all Loss arising from or connected with claims that the offer, sale, or use of the Products in the catalogs, or the catalog copy, photographs, artwork, and other creative materials supplied by Vendor, infringe upon patents, trademarks, trade names, service marks, copyrights, trade secrets, or other property rights of third parties, (d) from all Loss arising from or connected with Vendor's violations or suspected violations of Federal Trade Commission regulations, (e) from all Loss arising from or connected with Vendor's performance, non-performance, or improper performance of obligations pursuant to this Agreement. Vendor will maintain product liability insurance with insurers and in amounts reasonably satisfactory to SkyMall and will provide to SkyMall proof of insurance upon written request. Vendor's insurance will

name SkyMall as an additional insured and will be cancelable by the insurer only after 30 days notice to SkyMall.

5.5 Limitation of Liability. SKYMALL SHALL NOT BE LIABLE FOR ANY ECONOMIC, INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES, WHETHER FORESEEABLE OR UNFORESEEABLE WHETHER CLAIMED AT LAW OR EQUITY, IN TORT OR CONTRACT OR ANY OTHER LEGAL THEORY. THE MAXIMUM AGGREGATE AMOUNT OF ANY LIABILITY OF SKYMALL UNDER THIS AGREEMENT SHALL BE ONE HUNDRED PERCENT (100%) OF THE AMOUNTS PAID TO VENDOR HEREUNDER.

6. Confidentiality and Non-Competition.

6.1 Confidentiality. The parties have exclusive ownership and use of their own confidential information that each has developed at significant effort and expense. It will be necessary from time to time for the parties to disclose to one another confidential information relating to their business in connection with this Agreement. The parties will not at any time (a) use any confidential information supplied to each other for any purpose other than as permitted by this Agreement; (b) disclose any confidential information to any third party without written consent by the other party, except as mandated by a court of competent jurisdiction or (c) make any public statement of any kind regarding this Agreement without the express written consent of the other party that will not be unreasonably withheld or delayed.

6.2 Non-Competition. During the term of this Agreement, and for 1 year thereafter, Vendor agrees that it will not (either directly or through any other person or entity) offer any products or services: (a) in any catalog comprised of "stores" or sections of multiple vendors; (b) in any catalog available to customers in-flight or in-transit; (c) via any other shopping service that is directly competitive with the SkyMall program. In-flight magazines published by airlines, and catalogs distributed by mail (or other delivery services) to the home or workplace are not competitive with the SkyMall program.

7. Intellectual Property.

7.1 The parties acknowledge that they each have developed various trade names, trademarks, service marks and other intellectual property that are exclusively owned by each party (the "Intellectual Property"). The parties will not use the intellectual Property of the other for any commercial purpose without prior written authorization of the other party. Any use of the Intellectual Property by the parties hereto exclusively to the benefit of the owner, and the parties will not by such use or otherwise acquire any rights of any kind in the Intellectual Property. The parties acknowledge that any unauthorized use of any of the Intellectual Property will result in irreparable harm for which the injured party will be entitled to immediate injunctive relief and all other available remedies, and will also give that party the right to terminate this Agreement.

7.2 Vendor acknowledges that SkyMall is the exclusive owner of copyright in all issues of the SkyMall catalogs (except individual vendor sections that the Vendor or other third parties may own), and all rights under copyright in the SkyMall catalogs are reserved exclusively by SkyMall. SkyMall acknowledges that the Vendor is the exclusive owner of all copyrights associated with the materials supplied by Vendor to SkyMall hereunder. Each party acknowledges that any violation by it of the other party's rights under copyright will cause the other party irreparable harm for which the other party will be entitled to immediate injunctive relief and all other available remedies, and will also give such party the right to terminate this Agreement.

8. Term and Breach or Default.

8.1 Term of Agreement. This Agreement shall have an initial term beginning on the date of execution by Vendor and concluding on the last day of the promotion period provided on Exhibit A or any subsequently executed Exhibit A, plus the ninety (90) period in which SkyMall will continue to accept orders for Vendor's products. The parties may agree to extend the term of this Agreement through subsequent Exhibit A's. Notwithstanding the termination of this Agreement, the terms and conditions in Sections 3, 5, 6, 7 and 8 shall survive termination, unless otherwise provided therein.

8.2 Breach or Default. The existence or occurrence of any one or more of the following constitute a breach or default under this Agreement unless such breach or default is promptly cured within applicable grace periods: (a) Non-Payment: either party's refusal, failure, or neglect in making any required payment or performing any monetary obligation under this Agreement; (b) Performance: either party's refusal, failure, or neglect in the

performance of, or breach of, any non-monetary term, condition, covenant, warranty or representation contained in this Agreement shall have occurred and be continuing for 5 days after receiving written notice thereof from the other party; (c) Bankruptcy; the voluntary or involuntary filing of a petition in bankruptcy or receivership by either party. Failure to publish by SkyMall invalidates the order for participation in the missed program but does not constitute a breach of contract. In the event of a breach or default by a party, the other party may immediately terminate this Agreement upon written notice to the other party. This remedy is in addition to any other remedies a party may have at law, equity or otherwise. If Vendor prematurely terminates this Agreement, Vendor shall pay SkyMall the fees stated in Exhibit A.

**8.  General Terms and Conditions.**

8.1  Governing Law and Venue.  Arizona law governs this Agreement and all matters relating to the relationship between Vendor and SkyMall.  All disputes arising out of this Agreement or the relationship between Vendor and SkyMall are subject to the exclusive jurisdiction of the state and federal courts located in Maricopa County, Arizona.

8.2  Attorneys' Fees.  In any proceeding arising out of this Agreement, the prevailing party is entitled to recover reasonable attorneys' fees, costs and other expenses.

8.3  Notices.  Notices under this Agreement must be in writing and are effective upon delivery, or three days after mailing, first class postage prepaid, return receipt requested, to the addresses stated on Exhibit A.  A party may change the address for receiving notices by giving notice to the other party.

8.4  Entire Agreement.  This Agreement is the entire agreement between the parties, and supersedes all prior understandings, agreements, and commitments, with respect to its subject matter.

8.5  Amendment and Waiver.  This Agreement may be amended only by a written document signed by all parties.  Any waiver of a right, obligation or default must be in writing and signed by all parties.  A waiver of one right, obligation or default is not a waiver of any other or subsequent right, obligation or default.

8.6  Counterparts; Faxed Signatures.  This Agreement may be executed in any number of counterparts, each of which is an original.  All counterparts constitute one and the same Agreement which is binding upon all Parties even though all Parties do not sign the same counterpart.  Faxed signatures on one or more counterparts of this Agreement are legally binding.

8.7  No Assignment.  Vendor may not assign this Agreement without the express written consent of SkyMall.

8.8  Headings and Capitalization.  The headings and capitalized terms contained in this Agreement are for convenience and reference only, and are not to be considered in interpreting this Agreement.

8.9  Severability.  The unenforceability, illegality, or invalidity of any provision of this Agreement will not alter remaining provisions of Agreement.  Each provision is severable from all other provisions of this Agreement.

**10.  Agreement & Signature.**

This Agreement is effective beginning on the date of Vendor's execution (signature), until ninety days after the end of the promotion period on the latest Exhibit A signed by Vendor and SkyMall.

---

Vendor:  _BETA TECHNOLOGIES, INC._

By:  _____

Title: _VICE PRES_    Date: _10 FEB 06_

SkyMall, Inc.

By: _____

Title: _VP Sales and Merchandise_    Date: _2/21/06_

---

SkyMall, Inc.
Address for Notice:
1520 East Pima Street, Phoenix, AZ 85034
Attn: General Counsel

Revised 11/05

EXHIBIT "C"

MICHAEL A. HIERL
ARNE M. OLSON
DOLORES T. KENNEY
TALIVALDIS CEPURITIS
KATHRYN E. GARIPAY
JOSEPH M. KUO

ROBERT J. ROSS, Ph.D.
DENNIS H. MA
BRUCE R. MANSFIELD
MARK R. BAGLEY
MATTHEW O. KELLAM

LAW OFFICES OF
**OLSON & HIERL, LTD.**
70 NORTH WACKER DRIVE
36TH FLOOR
CHICAGO, ILLINOIS 60606
(312) 580-1180
FACSIMILE (312) 580-1189
firm@olsonhierl.com

PATENT,
TRADEMARKS
& RELATED MATTERS

SEYMOUR ROTHSTEIN
OF COUNSEL

August 17, 2006

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

CEO
SkyMall, Inc.
1520 East Pima Street
Phoenix, AZ 85034

Re: Cold Sore Inhibitor;
Summer 2006 Issue of SkyMall Magazine

Dear Sir:

We represent NexMed Holdings, Inc., the owner of U.S. Patent No. 5,133,352 (copy enclosed).

We note that on page 159 of the Summer 2006 issue of SkyMall magazine appears an advertisement for a "Cold Sore Inhibitor" (copy enclosed) which device appears to be the same as that which was the subject of a patent infringement lawsuit when it was marketed under the designation "Cold Sore Eliminator" *inter alia* in prior issues of the SkyMall magazine. See, for example, page 108 of the Late Spring 2005 issue (copy enclosed). We call this matter to your attention inasmuch as in that particular lawsuit a Judgment was rendered in favor of our client and against the sellers and promoters of the "Cold Sore Eliminator." A certified copy of that Judgment is enclosed for your information and file. Please note that the Judgment, in Paragraph 9, includes an injunction which applies, *inter alia*, not only to the Defendants but also to "... all other persons or entities acting or claiming to act on behalf of either Defendant, or in concert or in participation with either Defendant, who receive actual notice of this Judgment by personal service or otherwise."

Very truly yours,

OLSON & HIERL, LTD.

By Talivaldis Cepuritis

TC:psz
Enclosures

# EXHIBIT "D"



September 15, 2006

Beta Technologies
Chester Heath
490 E. Buckley Avenue
Springville, UT 84663-2070

      Re:    Notice letter from NexMed Holdings, Inc.

Dear Mr. Heath:

By this letter, SkyMall provides you with notice that it has been sent the attached letter
from NexMed Holdings, Inc. which purports to give SkyMall notice that by the distribution
of your Cold Sore Inhibitor, it is in violation of United States Patent No. 5,133,352. SkyMall
hereby requests written indemnification from you pursuant to the Vendor Agreement
between you and SkyMall for any costs associated with the possibility of defending this
claim.

We realize that you have been responsive to this matter, so please pardon the formal tone
of this letter. It is part of our standard indemnification procedure whenever we receive an
infringement notice letter. Should you have any questions, please contact your account
representative, Penny Rabjohn or me, at your first convenience to discuss this matter.

Thank you for your attention to this matter.

Sincerely,

*Christine Aguilera*

Christine Aguilera
President

Attachment

cc:    Vice President of Sales and Merchandising
       Product Manager

EXHIBIT "E"

**Main Identity**

| | |
|---|---|
| From: | <heathca@hsvfree.com> |
| To: | <foster@fosterpatlaw.com> |
| Sent: | Tuesday, October 24, 2006 12:11 PM |
| Subject: | [Fwd: SkyMall advertisement pulled] |

-------------------------- Original Message --------------------------
Subject: SkyMall advertisement pulled
From:   heathca@hsvfree.com
Date:   Tue, October 24, 2006 12:09 pm
To:     prabjohn@skymall.com
-------------------------------------------------------------------

Dear Penny,

During our phone conversation yesterday, monday, 21Oct06, 10:30am, you
mentioned that our previously approved SkyMall advertisement was pulled on
monday, 16Oct2006, for the quarterly EarlySpring2007/Jan07,Feb07,Mar07
magazines/catalogs, as you advised us in your email of 11Oct06, 11:20am.

This email is to confirm that we have been informed as of yesterday of
your decision.

It is unfortunate that the NexMed letter and other communications
demanding immediate cease and desist have jeopardized our contractual
obligations.   We understand that you are having difficulty fulfilling
your entire contract with us because of the NexMed threats.

We would appreciate your forwarding all communication written or oral
between NexMed and SkyMall about this matter.

Very Best Regards,

Chester

BETA TECHNOLOGIES INC., BTI
Cold Sore Inhibitor, Viral Inhibitor Pro
C/O CHESTER A. HEATH
490 EAST BUCKLEY AVE.
SPRINGVILLE, UT  84663-2070
801 491-8386, 372-0109 cell

From: "Penny Rabjohn" <prabjohn@Skymall.com>
Subject: URGENT
Date: Wed, October 11, 2006 11:20 am
To: heathca@hsvfree.com

Hi Chester,


We are at deadline for the Early Spring 2007. Unfortunately we are going
to have to pull your ad since we have not received a letter from the
other company saying it is o.k. for you to complete your contractual
obligations with us. We have also not received the indemnification
papers back either. So our policy is to basically stay out of issues
like this until there is a clear decision as to who has the right to use
the patent. If there is a change in this situation by Monday October
16th please let me know. Thx P.


This electronic message transmission contains information
from SkyMall, Inc. which may be confidential, proprietary or
privileged. The information is intended to be for the use of the
individual or entity named above. If you are not the intended
recipient, be aware that any disclosure, copying, distribution
or use of the contents of this information is prohibited. If you
have received this electronic transmission in error, please
notify the sender immediately by replying to this message
and destroying the original and all copies. Additionally you may
send a notice to postmaster@skymall.com immediately.
Thank you.

Download this as a file